**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**
**WESTERN DIVISION**

| | |
|---|---|
| Avangrid, Inc.,<br>Avangrid Networks, Inc.,<br>Central Maine Power Company, &<br>NECEC Transmission LLC,<br><br>                   Plaintiffs,<br><br>    v.<br><br>NextEra Energy, Inc.,<br>NextEra Energy Capital Holdings, Inc.,<br>NextEra Energy Resources, LLC, &<br>NextEra Energy Seabrook, LLC,<br><br>                  Defendants. | Case No. 3:24-cv-30141<br><br>ORAL ARGUMENT REQUESTED<br><br>Leave to File Granted April 7, 2025<br>ECF No. 79 |

**<ins>NEXTERA'S REPLY IN SUPPORT OF MOTION TO DISMISS</ins>**

# **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ................................................................................................. ii

I.     Because the Breaker Allegations Fail, the Complaint Should Be Dismissed Entirely ....... 2

     A.     *Trinko* Precludes Avangrid's Refusal-To-Upgrade Claim .................................... 2

     B.     The Seabrook Breaker Litigation Cannot Be Objectively Baseless Where One Circuit Judge Fully Adopted NextEra's Position ....................................................... 5

     C.     The Failure of the Seabrook Breaker Allegations Requires Complete Dismissal ........................................................................................................ 7

II.     The *Noerr-Pennington* Doctrine Protects NextEra's State Challenges to NECEC ............ 8

III.     Plaintiff Fails to Plausibly Allege NextEra Possesses Monopoly Power ......................... 10

IV.     Avangrid's State Law Claims Each Fail For Additional Reasons .................................... 12

V.     Avangrid's Claims Are Time-Barred .............................................................................. 15

CONCLUSION .............................................................................................................. 15

CERTIFICATE OF SERVICE ......................................................................................... 17

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*American President Lines, LLC, v. Matson, Inc.*,
2025 WL 870383 (D.D.C. Mar. 19, 2025) .............................................................................. 5

*Andersen v. Lasalle Bank National Association*,
2016 WL 3093375 (D. Mass. June 1, 2016) ............................................................................ 6

*Berklee College of Music, Inc. v. Music Indus. Educators, Inc.*,
733 F. Supp. 2d 204 (D. Mass. 2010) .................................................................................. 13

*Bonney v. Wash. Mut. Bank*,
596 F. Supp. 2d 173 (D. Mass. 2009) .................................................................................... 6

*Bruno Int'l Ltd. v. Vicor Corp.*,
2015 WL 5447652 (D. Mass., Sept. 16, 2015) ...................................................................... 13

*Butler Corp. v. Gen. Motors Acceptance Corp.*,
2002 WL 31926852 (D. Mass. Dec. 27, 2002) ...................................................................... 14

*Chemi SpA v. GlaxoSmithKline*,
356 F. Supp. 2d 495 (E.D. Pa. 2005) .................................................................................... 15

*City of Malden, Mo. v. Union Elec. Co.*,
887 F.2d 157 (8th Cir. 1989) ................................................................................................ 11

*Coastal Fuels of Puerto Rico, Inc. v. Caribbean Petroleum Corp.*,
79 F.3d 182 (1st Cir. 1996) ............................................................................................. 10, 12

*Copperweld Corp. v. Independence Tube Corp.*,
467 U.S. 752 (1984) .............................................................................................................. 10

*CrunchTime! Info. Sys., Inc. v. Frischs Restaurants, Inc.*,
2025 WL 563351 (D. Mass. 2025) ........................................................................................ 13

*CSX Transp., Inc. v. Norfolk S. Ry. Co.*,
2023 WL 25344 (E.D. Va. Jan. 3, 2023) .............................................................................. 15

*Double D Spotting Serv., Inc. v. Supervalu, Inc.*,
136 F.3d 554 (8th Cir. 1998) ................................................................................................ 12

*Duke Energy Carolinas, LLC v. NTE Carolinas II, LLC*,
111 F.4th 337 (4th Cir. 2024) ....................................................................................... 3, 4, 5, 11

*Fla. Mun. Power Agency v. Fla. Power & Light Co.*,
81 F. Supp. 2d 1313 (M.D. Fla. 1999) .............................................................................. 5, 11

*Gen Elec. Co. v. Lyon*,
  894 F. Supp. 544 (D. Mass. 1995) ................................................................. 13

*H1 Lincoln, Inc. v. S. Washington Street*,
  179 N.E.3d 545 (Mass. 2022) ....................................................................... 13

*Hanamura v. Newton*,
  104 Mass. App. Ct. 1108, 235 N.E.3d 320 (2024) ...................................... 12

*In re Colonial Mortg. Bankers Corp.*,
  324 F.3d 12 (1st Cir. 2003) ............................................................................ 6

*In re TelexFree Sec. Litig.*,
  358 F. Supp. 3d 118, 1(D. Mass. 2019). ..................................................... 15

*J.M. Smucker Co. v. Hormel Food Corp.*,
  526 F. Supp. 3d 294 (N.D. Ohio 2021) .......................................................... 6

*Kolon Indus. Inc. v. E.I. DuPont de Nemours & Co.*,
  748 F.3d 160 (4th Cir. 2014) ....................................................................... 10

*La. Health Serv. & Indem. Co. v. Janssen Biotech, Inc.*,
  2021 WL 4988523 (D.N.J. Oct. 27, 2021) ..................................................... 6

*Magnesium Elektron N.A., Inc. v. Applied Chemistries, Inc.*,
  2019 WL 7580061 (D. Mass. July 26, 2019) ............................................... 13

*Med. Mut. of Ohio, Inc. v. Braintree*,
  Lab'ys, 2011 WL 2708818 n.10 (D. Del. July 12, 2011) .............................. 15

*Music Ctr. S.N.C. DiLuciano Pisoni & C. v. Prestini Musical Instruments Corp.*,
  874 F. Supp. 543 (E.D.N.Y. 1995) ................................................................. 7

*Nat'l Ass'n of the Deaf v. Harvard Univ.*,
  377 F. Supp. 3d 49 (D. Mass. 2019) ............................................................ 13

*New York v. Facebook, Inc.*,
  549 F. Supp. 3d 6 (D.D.C. 2021) .................................................................... 4

*NextEra Energy Res., LLC v. FERC*,
  118 F.4th 361 (D.C. Cir. 2024) ...................................................................... 7

*Novell, Inc. v. Microsoft Corp.*,
  731 F.3d 1064 (10th Cir. 2013) ...................................................................... 2

*Otter Tail Power Co. v. United States*,
  410 U.S. 366 (1973) ........................................................................................ 3

*Pac. Bell Tele. Co. v. linkLine Comm'ns, Inc.*,
   555 U.S. 438 (2009) ........................................................................................... 4

*PMP Associates, Inc. v. Globe Newspaper Co.*,
   321 N.E.2d 915 (Mass. 1975) ........................................................................... 13

*Prof'l Real Estate Inv'rs, Inc. v. Columbia Pictures Indus., Inc. ("PREI")*,
   508 U.S. 49 (1993) .................................................................................... 6, 9, 15

*Puerto Rico Telephone Co., Inc. v. San Juan Cable LLC*,
   874 F.3d 767 (1st Cir. 2017) .............................................................................. 9

*RSA Media, Inc. v. AK Media Grp., Inc.*,
   260 F.3d 10 (1st Cir. 2001) ............................................................................ 7, 8

*Shaulis v. Nordstrom, Inc.*,
   865 F.3d 1 (1st Cir. 2017) ................................................................................ 14

*Steward Health Care Sys., LLC v. Blue Cross & Blue Shield*,
   311 F. Supp. 3d 468 (D.R.I. 2018) .................................................................... 2

*Storage Tech. Corp. v. Custom Hardware Eng'g & Consulting, Ltd.*,
   2006 WL 1766434 (D. Mass. June 28, 2006) ................................................. 14

*TCS John Huxley Am. v. Sci. Games Corp.*,
   2020 WL 1678258 (N.D. Ill. Mar. 20, 2020) ................................................... 15

*Tomasella v. Nestlé USA, Inc.*,
   962 F.3d 60 (1st Cir. 2020) .............................................................................. 15

*Trustees of the Univ. of Pa. v. St. Jude Children's Rsch. Hosp.*,
   940 F. Supp. 2d 233 (E.D. Pa. 2013) ................................................................ 6

*U.S. Anchor Mfg. Inc. v. Rule Indus., Inc.*,
   7 F.3d 986 (11th Cir. 1993) ............................................................................. 10

*U.S. Futures Exch., L.L.C. v. Bd. of Trade of the City of Chicago, Inc.*,
   953 F.3d 955 (7th Cir. 2020) ............................................................................. 9

*UCP Int'l Co. v. Balsam Brands Inc.*,
   420 F. Supp. 3d 966 (N.D. Cal. 2019) .............................................................. 6

*Uncle Henry's Inc. v. Plaut Consulting Co.*,
   399 F.3d 33 (1st Cir. 2005) .............................................................................. 13

*United Food & Com. Workers Unions & Emps. Midwest Health Benefits Fund v. Novartis Pharms. Corp.*,
   902 F.3d 1 (1st Cir. 2018), 2017 WL 2837002 (D. Mass. June 30, 2017) ................ 6

*United States v. Terminal R.R. Ass'n of St. Louis*,
    224 U.S. 383 (1912) ................................................................................................ 5

*United States v. Western Electric Co., Inc.*,
    767 F. Supp. 308 (D.D.C. 1991) ........................................................................... 11

*Vazquez-Ramos v. Triple-S Salud, Inc.*,
    55 F.4th 286 (1st Cir. 2022) ................................................................................. 12

*Verizon Commc'ns Inc. v. L. Offs of Curtis V. Trinko, LLP*,
    540 U.S. 398 (2004) ..................................................................................... passim

*Z Techs. Corp. v. Lubrizol Corp.*,
    753 F.3d 594 (6th Cir. 2014) ................................................................................ 15

## **Statutes**

MGL ch. 93A § 11 ................................................................................................... 13

Gen. Laws ch. 231, § 59H ....................................................................................... 12

## **Other Authorities**

P. Areeda & H. Hovenkamp, Antitrust Law (2022) § 772a ...................................... 11

P. Areeda & H. Hovenkamp, Antitrust Law (2022) § 773c ...................................... 11

P. Areeda & H. Hovenkamp, Antitrust Law (2022) § 773e ........................................ 3

P. Areeda & H. Hovenkamp, Antitrust Law (2022) § 320c3 ..................................... 15

P. Areeda & H. Hovenkamp, Antitrust Law (2022) § 320c4 ..................................... 15

Avangrid's Complaint floods the Court with so many accusations that it masks how legally flawed each aspect of its case is. ***Inviting clear error***, Avangrid repeatedly argues that, because it has jammed so many elements into its kitchen-sink of an "anticompetitive scheme," the Court should ignore the controlling Supreme Court precedent that would dispose of each of those elements. And, at every turn, Avangrid urges the Court not to scrutinize its allegations, falsely claiming that the Court cannot dismiss claims of this type (when courts regularly do) and brushing off fatal pleading deficiencies as mere "factual disputes." But NextEra's motion meticulously relies entirely on ***indisputable*** facts—affirmatively alleged or in the public record—that render every aspect of Avangrid's case implausible as a matter of law, so that it can be decided on a motion to dismiss.

Although it spans nearly 500 paragraphs, the material crux of Avangrid's Complaint is simple: Avangrid objects to the fact that, when Avangrid asked NextEra to upgrade the Seabrook Breaker (the "Breaker") ***solely*** to support Avangrid's NECEC project, NextEra sought to protect itself against potential losses that might result from the upgrade and then petitioned the Federal Energy Regulatory Commission ("FERC") for an order confirming NextEra was entitled to that protection. But while Avangrid prevailed in that dispute, Avangrid cannot now parlay that win into an antitrust claim. First, the Supreme Court makes clear that, whatever regulatory obligations businesses have, they do not have an ***antitrust*** duty to aid rivals under these circumstances, especially when it involves incurring a potential loss to do so. And second, the Supreme Court is equally clear that antitrust liability cannot arise from Constitutionally-protected petitioning unless the petition was "objectively baseless," which is implausible here given that a federal appellate judge in the FERC litigation concluded that NextEra was ***correct in its legal arguments***. Because the entirety of Avangrid's alleged harm is tied to those Breaker allegations, the remainder of

Avangrid's Complaint also cannot survive the motion to dismiss.

The remaining allegations all fail on their own terms as well. As to the allegedly sham state permitting petitions and voter referenda, when Avangrid is confronted with judicially noticeable public records, it merely repeats the same allegations those records conclusively debunk and begs the Court to defer scrutiny. As to its allegations of monopoly power—the deficiencies of which also independently require dismissal of the antitrust claims—Avangrid contorts antitrust law into something unrecognizable, having completely failed to allege that NextEra possesses anything close to a dominant share of any cognizable antitrust market.

## I.    Because the Breaker Allegations Fail, the Complaint Should Be Dismissed Entirely

### A.    *Trinko* Precludes Avangrid's Refusal-To-Upgrade Claim

Avangrid's case rises and falls on its allegation that NextEra refused to aid NECEC's market entry by upgrading the Breaker until the D.C. Circuit upheld a FERC order requiring NextEra to do so. But whatever FERC regulations compel, the ***antitrust laws*** do not require competitors to assist rivals except in the narrow circumstances outlined in *Verizon Commc'ns Inc. v. L. Offs of Curtis V. Trinko, LLP*, 540 U.S. 398 (2004), and Avangrid's allegations here do not satisfy ***any*** of the necessary predicates *Trinko* requires. Indeed, although *Trinko* provides the controlling framework this Court must apply, Avangrid studiously ignores *Trinko*'s explicit requirements throughout its 50-page opposition.

As a preliminary matter, Avangrid cannot deny that it fails to allege a discontinuation of a voluntary, pre-existing course of dealing, as *Trinko* requires.[1] While Avangrid does make passing reference (at 14 n.10) to NextEra's obligations under the mandatory interconnection agreement

---

[1] 540 U.S. at 409; *see also Novell, Inc. v. Microsoft Corp.*, 731 F.3d 1064, 1074 (10th Cir. 2013). Even the few decisions not requiring a course of dealing between plaintiff and defendant nonetheless involve a defendant changing its course of conduct to block plaintiff's entry to market, not a refusal to do something new. *See, e.g.*, *Steward Health Care Sys., LLC v. Blue Cross & Blue Shield*, 311 F. Supp. 3d 468, 487 (D.R.I. 2018).

between NextEra and ISO-New England ("LGIA"), *Trinko* expressly holds that the requisite prior course of dealing must be ***voluntary***, not one imposed by regulation.[2] Moreover, Avangrid does not allege (nor could it) that NextEra ***terminated*** the LGIA. That makes this case unlike *Duke Energy Carolinas, LLC v. NTE Carolinas II, LLC*, 111 F.4th 337 (4th Cir. 2024), which incorrectly ignored *Trinko*'s requirement of a "voluntary" course of dealing, but nonetheless involved a defendant that ***terminated*** an ***existing contract*** and an ongoing project with the plaintiff, *id.* at 348.

Indeed, Avangrid goes far beyond the reach of *Trinko*, seeking to impose liability for NextEra's refusal to provide Avangrid a service NextEra ***has never provided anyone***. After all, Avangrid affirmatively alleges that NextEra had "never upgraded" the Breaker. Compl. ¶ 150. That is dispositive. *See Trinko*, 540 U.S. at 409-410 (deeming "fundamental" that "what the defendant refused to provide to its competitor was a product that it already sold at retail"); *cf.* P. Areeda & H. Hovenkamp, Antitrust Law (2022) ("Areeda") § 773e ("No case has suggested that the [alleged] monopolist must build new capacity to satisfy a would-be sharer."). Avangrid relies on *Otter Tail Power Co. v. United States*, 410 U.S. 366 (1973) (at 7-8), but even there (as *Trinko* itself emphasized), the defendant was "already in the business of providing a service to certain customers (power transmission over its network), and refused to provide the same service to certain other customers." 540 U.S. at 410.

Further, Avangrid does not allege NextEra's supposed refusal demonstrated a "willingness to forsake short-term profits," as *Trinko* also requires. *Id.* at 409. By alleging the Breaker was operating below its maximum capacity, Compl. ¶ 150, Avangrid admits that the Breaker, without any upgrade, was adequate to allow Seabrook to sell its entire maximum output capacity into the

---

[2] *Trinko*, 540 U.S. at 409 ("The refusal to deal alleged in the present case does not fit within the limited exception recognized in *Aspen Skiing*. The complaint does not allege that Verizon voluntarily engaged in a course of dealing with its rivals, or would ever have done so absent statutory compulsion.").

market. Since the Breaker upgrade was to accommodate Avangrid, NextEra requested that Avangrid fully cover NextEra's potential loss if the Upgrade resulted in a prolonged outage; Avangrid refused. Thus, not only does Avangrid fail to allege the Breaker upgrade would have been profitable for NextEra, Avangrid affirmatively alleges it was unwilling to cover NextEra's **potential losses** arising from the upgrade, and it was that dispute over who should bear the risk of loss led to the FERC litigation. Compl. ¶¶ 42, 327-328.[3] Here again, *Duke Energy* demonstrates why Avangrid's claim fails as a matter of law. There, the court—citing *Trinko*—emphasized that the defendant "forewent a profitable arrangement." 111 F.4th at 363-64 (contrasting *Trinko* where "the interconnection service Verizon was required to offer its rivals was not profitable to it").

Unable to satisfy *Trinko*, Avangrid resorts to misleadingly suggesting (at 9) that the Court should not apply *Trinko* at all because Avangrid alleges a broader scheme involving allegedly sham petitioning. That would be plain error. While basic antitrust principles hold that anticompetitive conduct should be viewed as a whole, a plaintiff cannot turn a lawful refusal under *Trinko* into an unlawful act merely by labeling the refusal part of a broader "scheme." *Pac. Bell Tele. Co. v. linkLine Comm'ns, Inc.*, 555 U.S. 438, 457 (2009) (refusing to "alchemize" an insufficiently pleaded refusal-to-deal under *Trinko* with other conduct to create a new form of antitrust liability); *New York v. Facebook, Inc.*, 549 F. Supp. 3d 6, 46 (D.D.C. 2021) (holding "unilateral refusals to deal that are lawful" may not "be considered as part of a 'monopoly broth' or 'course of conduct' that violates Section 2"), *aff'd*, 66 F.4th 288 (D.C. Cir. 2023). In fact, *Duke Energy*—which Avangrid cites in support of its "whole-scheme approach" (at 11)—involved a

---

[3] In a footnote, Avangrid implausibly asserts that NextEra incurred "greater risk" by not upgrading the Breaker, which is false: there is no allegation that the load on the Breaker, prior to the upgrade, would exceed its tolerance, or that regulators, including the **Nuclear Regulatory Commission**, would have allowed that to occur. Avangrid's allegations about safety concerns are not only implausible but entirely fictional and contrary to the public record. NextEra Br. at 5 n.6. These allegations are also irrelevant; Avangrid cites no case for the idea that "incurring risk" is the same thing as "sacrificing short-term profits" under *Trinko*.

refusal to deal that tracks the *Trinko* requirements, as discussed above. 111 F.4th at 363-67; *see American President Lines, LLC, v. Matson, Inc.*, 2025 WL 870383, at *9-10 (D.D.C. Mar. 19, 2025) ("While [*Duke Energy*] repeatedly described the conduct alleged by the plaintiffs as a 'scheme,' it nonetheless divided the scheme into two prongs and found each to be anticompetitive on its own.").

Nor can Avangrid duck the requirements of *Trinko* by framing the Breaker allegations as a "'bottleneck monopoly' type of 'essential facilities' claim." (at 13). As the Court in *Trinko* explained, even if it were to recognize the essential facilities theory (which it expressly did not), an "indispensable requirement for invoking the doctrine is the unavailability of access to the 'essential facilities'" and thus such claims must be denied "where a state or federal agency has effective power to compel sharing and to regulate its scope and terms." 540 U.S. at 411. Here, there is no dispute that FERC can and has compelled access, thus precluding an essential facilities claim.[4] Avangrid's leading case for its bottleneck monopoly/essential facility theory is the century-old *United States v. Terminal R.R. Ass'n of St. Louis*, 224 U.S. 383 (1912) (at 13). But, as *Trinko* explained, because *Terminal R.R.* involved a group boycott, its holding does not apply in a case like this involving an alleged unilateral refusal to deal. 540 U.S. at 410 n.3 (explaining that *Terminal R.R.* "involved *concerted* action, which presents greater anticompetitive concerns and is amenable to a remedy that does not require judicial estimation of free-market forces").[5]

## B. The Seabrook Breaker Litigation Cannot Be Objectively Baseless Where One Circuit Judge Fully Adopted NextEra's Position

Avangrid's related allegations that NextEra's positions in the FERC litigation were

---

[4] To the extent the Middle District of Florida's 1999 decision in *Fla. Mun. Power Agency v. Fla. Power & Light Co.*, 81 F. Supp. 2d 1313 (M.D. Fla. 1999), is to the contrary (cited at 12-13), it is no longer good law after *Trinko*.

[5] Avangrid does not address *Trinko*'s treatment of the essential-facilities doctrine. Instead, Avangrid denies (at 34) that "monopolization claims 'were impossible in regulated markets,'" an argument NextEra never advanced. Rather, a "refusal to deal" can proceed only if the *Trinko* elements are satisfied; there is no separate claim for "essential facilities" where FERC can compel sharing.

"objectively baseless" (at 27-28) do not withstand scrutiny. As an initial matter, Avangrid cannot avoid scrutiny of its allegations by falsely contending (at 15-16) that *Noerr-Pennington* immunity cannot be determined on a motion to dismiss. The First Circuit has confirmed that dismissal of sham petitioning claims is appropriate where, as here, the allegations render implausible any claim of "objective baselessness." *United Food & Com. Workers Unions & Emps. Midwest Health Benefits Fund v. Novartis Pharms. Corp*., 902 F.3d 1, 14-15 (1st Cir. 2018); *see also* NextEra Br. at 16-17 (collecting cases).[6] Moreover, contrary to Avangrid's assertion (at 2 n. 2), courts can and do take judicial notice of regulatory and judicial filings to consider which parties participated, what arguments were advanced, and how the courts treated these arguments. *Novartis*, 2017 WL 2837002, at *3 n.5, *11 (D. Mass. June 30, 2017), *aff'd*, 902 F.3d 1 (1st Cir. 2018) (taking judicial notice of Patent Board's decision and contents of public documents in the patent's prosecution history and finding that plaintiffs did not allege plausible sham litigation claims).[7]

Avangrid's allegations concerning the FERC litigation reduce to the mere fact that FERC rejected NextEra's arguments, but that is insufficient. *Prof'l Real Estate Inv'rs, Inc. v. Columbia Pictures Indus., Inc.* ("*PREI*"), 508 U.S. 49, 60 n.5 (1993) (forbidding courts to engage in "*post hoc* reasoning … that an ultimately unsuccessful action must have been unreasonable or without foundation"). Nor can Avangrid simply declare a "factual dispute" to get a free pass to summary

---

[6] *See also, e.g.*, *La. Health Serv. & Indem. Co. v. Janssen Biotech, Inc*., 2021 WL 4988523, at *7 (D.N.J. Oct. 27, 2021); *J.M. Smucker Co. v. Hormel Food Corp.*, 526 F. Supp. 3d 294, 309 (N.D. Ohio 2021); *UCP Int'l Co. v. Balsam Brands Inc.*, 420 F. Supp. 3d 966, 981 (N.D. Cal. 2019); *Trustees of the Univ. of Pa. v. St. Jude Children's Rsch. Hosp.*, 940 F. Supp. 2d 233, 242-43 (E.D. Pa. 2013). Avangrid (at 16) disingenuously cites *Bonney v. Wash. Mut. Bank*, 596 F. Supp. 2d 173, 179 (D. Mass. 2009), a case that did not even involve *Noerr-Pennington* immunity, to suggest that objective baselessness is a question of fact. Avangrid also relies on a combination of (1) cases in which the allegedly sham proceedings were still ongoing; (2) cases in which the defendant allegedly engaged in fraudulent conduct, misrepresented evidence, or raised arguments that had previously been rejected; and (3) dated out-of-circuit cases with sparse reasoning.

[7] *Cf. In re Colonial Mortg. Bankers Corp*., 324 F.3d 12, 15 (1st Cir. 2003) (taking judicial notice of a final judgment to determine that an action was barred under the doctrine of res judicata); *Andersen v. Lasalle Bank Nat'l Ass'n*, 2016 WL 3093375, at *1 (D. Mass. June 1, 2016) (Mastroianni, J.) (taking judicial notice of a prospectus filed on EDGAR and granting motion to dismiss).

judgment (at 28). By its own admission, the FERC matter turned on contract interpretation (Compl. ¶ 345), a question of law. That one of three judges on the D.C. Circuit determined that NextEra's positions were ***correct*** (supported by "the plain meaning of the relevant contracts")[8] conclusively demonstrates that Avangrid's allegations of "objective baselessness" are implausible. *Music Ctr. S.N.C. DiLuciano Pisoni & C. v. Prestini Musical Instruments Corp.*, 874 F. Supp. 543, 554 (E.D.N.Y. 1995) (holding petition "cannot be viewed as objectively baseless," explaining "[a]t a minimum, this dissent [agreeing with antitrust defendant] demonstrates that there was substantial ground for disagreement as to the ultimate determination in that proceeding."). And Avangrid does not dispute that the D.C. Circuit's majority opinion left open a future NextEra request to recover extraordinary costs in the event of an extended outage, a reservation which in itself precludes a finding of objective baselessness.[9]

### C.    The Failure of the Seabrook Breaker Allegations Requires Complete Dismissal

Once the Court rejects Avangrid's refusal-to-upgrade claim the Court should stop there.[10] It is black letter law that antitrust claims require "causation between the alleged violation and the alleged harm." *RSA Media, Inc. v. AK Media Grp., Inc.*, 260 F.3d 10, 14 (1st Cir. 2001). But here, Avangrid's antitrust injuries—the purported delay to NECEC caused by NextEra's conduct—are expressly and completely tied to the fact that "NextEra did not complete the upgrade [of the Breaker] until November 2024." Compl. ¶ 357. Thus, if NextEra's decision not to complete the Breaker upgrade until November 2024 does not violate the antitrust laws (and it does not), none

---

[8] *NextEra Energy Res., LLC v. FERC*, 118 F.4th 361, 376-78 (D.C. Cir. 2024) (Rao, J., dissenting) ("At the center of this case is a contract dispute. Is Seabrook Station required to upgrade its circuit breaker so that Avangrid can connect to the ISO New England grid? Under the plain meaning of the relevant contracts, Seabrook has no such obligation.").

[9] *NextEra Energy Res.*, 118 F.4th at 373. Similarly, Avangrid ignores that FERC and the D.C. Circuit did not adopt Avangrid's position in the dispute; both tribunals ruled on a basis that Avangrid had not advanced. Br. at 17-18.

[10] Indeed, if the Court agrees that Avangrid has not plausibly alleged that the FERC litigation over responsibility for the costs and risks of the Breaker upgrade was a sham, the earliest date NextEra could be liable for a refusal to deal under the antitrust laws is when the D.C. Circuit determined there was a regulatory duty to upgrade the breaker.

of the other petitions challenged in the Complaint could have caused any delay to NECEC because, by Avangrid's own allegations, they all concluded long before the upgrade issue was resolved in November 2024. Br. at 10-13. Tellingly, Avangrid barely responds to this point, suggesting only—in a footnote (at 45 n.42)—that it is a "fact-intensive causation issue." But there is not *a single fact alleged in Avangrid's Complaint* that plausibly suggests or supports a reasonable inference that any other petitioning activity caused any delay if the Breaker upgrade would have precluded market entry anyway. Thus, NextEra's lawful conduct with respect to the Breaker necessarily breaks the chain of causation—the "critical path"—between Avangrid's alleged injury and all remaining conduct attacked in the Complaint. *RSA Media*, 260 F.3d at 15.

## II.    The *Noerr-Pennington* Doctrine Protects NextEra's State Challenges to NECEC

Even if the Breaker issues did not dispose of the Complaint, the remaining elements of the alleged "anticompetitive scheme" fare no better for Avangrid. Avangrid hopes to save those remaining sham petitioning claims (concerning those earlier state permitting proceedings and the Maine referenda) simply by repeating the very allegations that were debunked by the public records NextEra introduced,[11] and by urging the Court to defer all scrutiny. But, as discussed above, the Court can and should review the undisputed records of the underlying proceedings. *See supra* at § I(B). And, as detailed in NextEra's initial brief (Br. at § II), those records demonstrate, as a matter of law, that NextEra's petitioning was not objectively baseless. Avangrid attempts to interject issues it claims are factual, such as alleged errors in NextEra's modeling in one proceeding and inconsistencies between NextEra's bidding position and litigation positions. But these matters

---

[11] For example, Avangrid claims at several points, *e.g.*, 22 and 26, that the Maine Ethics Commission found NextEra liable for campaign finance violations. There was never such a finding, as is clear from the records of the investigation. *See* Ford Decl. Exs. 26 (Consent Agreement, *In re Alpine Initiatives LLC*) (Nov. 29, 2023) and Ex. 27 (Consent Agreement, *In re Clean Energy for ME*, LLC d/b/a Stop The Corridor) (Nov. 29, 2023). Elsewhere (at 3), Avangrid asserts that the Massachusetts SJC "held that NextEra advanced 'absurd' interpretations of statutory requirements," even though the SJC expressly acknowledged that the interpretation it labeled "absurd" was *not* NextEra's position. Ford Decl. Ex. 15 at 56-58.

already were considered and accounted for by the judicial bodies in underlying proceedings and ultimately have no bearing on the question here: whether Avangrid has plausibly alleged that "no reasonable litigant in [NextEra's] position could realistically expect success on the merits." *PREI*, 508 U.S. at 50. Because the records of the underlying proceedings are undisputed, that is a "matter of law," *id*. at 63, which turns on the Court's evaluation of the arguments that were raised and how they were resolved. *See id*. at 63-64 ("The question is not whether [the defendant] thought the facts to constitute probable cause, but whether the court thinks they did.") (citation omitted).

The public records also indisputably show that other litigants supported NextEra's positions, including the Maine Attorney General when it came to Referendum 2, (Br. at 28-29). Indeed, in each of the state petitions NextEra was just one of many intervenors who opposed NECEC (Br. at 10-11). Avangrid again asserts (at 16) that this presents a factual question, but the Complaint does not plausibly allege that all these parties—including the Maine Attorney General who led the defense of Referendum 2—were "extensions" of NextEra it controlled.

Nor can Avangrid avoid scrutiny of its sham allegations by asking the Court to focus instead on the "cumulative" nature of NextEra's petitioning activity (at 17-18), rather than evaluate each petition individually on its own merits. The First Circuit in *Puerto Rico Telephone Co. v. San Juan Cable LLC*, 874 F.3d 767, 769-70 (1st Cir. 2017), expressly rejected the notion that a more flexible test applies when the plaintiff challenges a series of petitions, holding that there "is little logic in concluding that an exercise of the right to file an objectively reasonable petition loses its protection merely because it is accompanied by other exercises of that right." *Id*. at 772 (explaining that "none of [the other] circuits have ever sustained a finding of liability while simultaneously determining that no frivolous petitions were filed"); *see also U.S. Futures Exch., L.L.C. v. Bd. of Trade of the City of Chi., Inc*., 953 F.3d 955, 965 (7th Cir. 2020) ("We stand with the First Circuit"

holding that petitioners should not "lose[] the right to file an objectively reasonable petition merely because it chooses to exercise that right more than once[.]").

## III.    Plaintiff Fails to Plausibly Allege NextEra Possesses Monopoly Power

Even if Avangrid had pleaded some anticompetitive conduct, its monopolization claims still would independently fail because there is no principle, in law or logic, that allows for a reasonable inference that a party with less than a 15% market share is a monopolist. Avangrid incorrectly argues (at 30-33) that NextEra's insignificant share of the "Downstream Markets" is irrelevant because Avangrid claims to allege "direct evidence" of monopoly power. But monopoly power exists only if a firm is "truly predominant in the market," *Kolon Indus. Inc. v. E.I. DuPont de Nemours & Co.*, 748 F.3d 160, 173-74 (4th Cir. 2014) (citation omitted), such that it can "reduce marketwide output [and thereby increase marketwide price] simply by cutting its own output." *U.S. Anchor Mfg. Inc. v. Rule Indus., Inc.*, 7 F.3d 986, 995-96 (11th Cir. 1993). Thus "direct evidence" of monopoly power must show that there is a ***dominant*** firm in a relevant market that can charge supracompetitive prices ***by restricting its own output***. *Coastal Fuels of P.R., Inc. v. Caribbean Petrol. Corp.*, 79 F.3d 182, 196 (1st Cir. 1996). Avangrid could never allege that given NextEra's modest share of a price-regulated market. Instead, Avangrid's purported "direct evidence" is merely that NextEra allegedly delayed a ***single project*** pending adjudication of the parties' dispute at FERC. That cannot possibly render NextEra an actual or potential monopolist when NextEra already faced extensive price-constraining competition from existing suppliers. *See Copperweld Corp. v. Indep. Tube Corp.*, 467 U.S. 752, 775 (1984) (Sherman Act "leaves untouched a single firm's anticompetitive conduct (short of threatened monopolization)").

Nor can Avangrid overcome NextEra's low market share by claiming (at 28-30) that "the bottleneck itself" establishes NextEra had a "monopoly." As Avangrid's own cases recognize, "bottleneck" is just another word for "essential facility," and the essential-facilities doctrine is a

***theory of anticompetitive conduct***, and does not relieve the plaintiff of alleging that the defendant occupies a monopoly position. *City of Malden, Mo. v. Union Elec. Co.*, 887 F.2d 157, 160 (8th Cir. 1989) ("[T]he 'bottleneck' or essential facilities doctrine" requires "control of an essential facility by a monopolist[.]"). As the Areeda & Hovenkamp treatise, cited by Avangrid, explains:

> The minimum condition that must be satisfied … is that the defendant be a monopolist. Further, by "monopolist" we do not mean that the defendant is sole controller of the alleged essential facility. … If the defendant does not dominate a realistically defined market, then it does not possess power over market output or price, and forcing access to its facility would not reduce an actual or potential monopoly power that does not exist.

Areeda § 773c at 9. Indeed, Avangrid cites no authority suggesting a "bottleneck" can establish a monopoly when (as here) the defendant has no prospect of using it to obtain a monopoly position in any relevant market.[12] Finally, Avangrid ignores *Trinko's* mandate  that where FERC has the power to compel sharing of a facility required for grid access, there cannot be an actionable "bottleneck." *See supra* at § I(A). Of course, this case  is nothing like *Duke Energy*, where defendant had a "'durably high market share' … approaching 90%[,]" and FERC had no authority "specifically to eradicate existing monopolies." 111 F.4th at 353, 365.

Finally, Avangrid cannot save its antitrust claims by concocting a so-called "Input Market" comprising a single piece of equipment (the Breaker) and declaring that NextEra possesses a 100% market share. Confronted with the absurdity of that proposition, Avangrid shifts gears and argues (at 33) that the Input Market is not simply the Breaker itself, but rather the ***transaction*** to upgrade the Breaker, which supposedly makes it a market for "***access*** to the Grid." But a "market" is a

---

[12] None of Avangrid's authority (at 29-30) is to the contrary. The road-crossing hypothetical Avangrid cites presupposes that the defendant is a monopolist with the ability to "set a price for crossing its land that captures the entire monopoly returns" in the downstream market. Areeda § 772a. *Malden* similarly held that a "bottleneck theory" ***requires*** proof of "monopoly power." 887 F.2d at 162-63. *United States v. Western Electric Co., Inc.*, 767 F. Supp. 308 (D.D.C. 1991), held that defendants had "monopoly power in local exchange markets." *Id.* at 314. And the court in *Florida Municipal* refused to find monopoly power because the plaintiff "fail[ed] to present any evidence establishing FPL's market share for bulk power sales." 81 F. Supp. 2d at 1333.

"*grouping* of sales," not a single sale. *Coastal Fuels*, 79 F.3d at 197 (emphasis added). At most, Avangrid alleges that NextEra had the choice whether to make a *single transaction* to upgrade *one breaker*. Thus, even if Avangrid is allowed to redefine the "Input Market," it is not a market as a matter of law. *Double D Spotting Serv., Inc. v. Supervalu, Inc.*, 136 F.3d 554, 561 (8th Cir. 1998) ("[O]ne unloading contract at one particular warehouse" is not a "valid relevant market[.]").[13] In short, there is no plausible allegation that control of the Breaker turns a regulatory dispute over who should bear the costs for upgrading into a Section 2 monopolization case.

## IV.  Avangrid's State Law Claims Each Fail For Additional Reasons

*Anti-SLAPP Special Motion (Counts VI and VII)*. Avangrid tries to evade NextEra's Anti-SLAPP motion by arguing (at 39) that "[t]he *Complaint* alleges" a "mixed" scheme involving both petitioning and non-petitioning activity. But Anti-SLAPP motions are applied on a "count by count" basis, *Hanamura v. Newton*, 104 Mass. App. Ct. 1108, at *3 (2024) (citation omitted), and NextEra's motion is directed to Avangrid's conspiracy counts only. By definition, those counts deal entirely with alleged coordination surrounding regulatory petitions, court actions, and referendum campaigns, all involving the assertion of its "right of petition" protected by the Anti-SLAPP law. *See* Mass. Gen. Laws ch. 231, § 59H. Avangrid provides no explanation why its Count VII (civil conspiracy) arises from anything other than petitioning activity. Avangrid therefore must show now by a "preponderance of the evidence" that NextEra's petitioning "was devoid of any reasonable factual support or arguable basis in law," and "caused actual injury to" Avangrid. *Id.* Avangrid has not presented any evidence *at all* to meet this burden.

*Chapter 93A (Count X)*. Avangrid wrongly asserts (at 36) that the Court cannot dismiss a

---

[13] Avangrid makes virtually no attempt to defend its "transmission-constrained submarkets," only incorrectly asserting (at 34) that "[m]arket definition" cannot be resolved on a motion to dismiss, when in fact the case Avangrid cites acknowledged that dismissal is appropriate if "the relevant market is legally insufficient." *Vazquez-Ramos v. Triple-S Salud, Inc.*, 55 F.4th 286, 297 (1st Cir. 2022).

93A claim on the grounds that the conduct did not occur "primarily and substantially" in Massachusetts because the burden is on the defense. Mass. Gen. Laws ch. 93A, § 11. But Avangrid's own authority makes clear that plaintiffs can plead themselves out of 93A claim on this basis.[14] The court in *Bruno International Ltd. v. Vicor Corp.*, 2015 WL 5447652, at *1, 18-19 (D. Mass., Sept. 16, 2015), for example, examined the caselaw Avangrid cites and concluded that dismissal was appropriate where, as here, the complaint "itself has characterized" the conduct as "occurring primarily and substantially" outside of Massachusetts. *See also CrunchTime! Info. Sys., Inc. v. Frischs Restaurants, Inc.*, 2025 WL 563351, *2-3 (D. Mass. 2025) (same). Avangrid cannot dispute that ***by its own allegations*** virtually all the conduct occurred out of state. The entirety of the Seabrook Breaker allegations, the entirety of the Maine referendum campaigns, and all but one of the permitting petitions occurred outside of Massachusetts. *See* Br. at 49-50.[15]

Avangrid also does not dispute the wealth of authority establishing that 93A does not reach conduct protected by *Noerr-Pennington* or unilateral refusals to deal. *See* Br. at 13 n.10, 16 n.15.[16] Avangrid's authority does not suggest otherwise.  The "stringing along" claim in *H1 Lincoln, Inc. v. S. Washington Street*, 179 N.E.3d 545 (Mass. 2022) (at 38), concerned continued misrepresentations to induce detrimental reliance, *id.* at 558, whereas Avangrid admits that NextEra was consistent and upfront about its need to be held harmless when it came to the Breaker. Compl. ¶¶ 325-327. And liability in *General Electric Co. v. Lyon*, 894 F. Supp. 544, 551-52 (D.

---

[14] *See Nat'l Ass'n of the Deaf v. Harvard Univ.*, 377 F. Supp. 3d 49, 68 (D. Mass. 2019) (affirmative defense can be ruled on when it is "evident" from complaint); *Berklee College of Music, Inc. v. Music Indus. Educators, Inc.*, 733 F. Supp. 2d 204, 213 (D. Mass. 2010) ("pleading concession" can warrant dismissal).

[15] Avangrid attempts to describe connections to Massachusetts, but it ignores that 93A focuses on the location of the actionable ***conduct***, Br. at 49, and Avangrid is an out-of-state plaintiff complaining of conduct that primarily occurred out-of-state. *See Uncle Henry's Inc. v. Plaut Consulting Co.*, 399 F.3d 33, 44-45 (1st Cir. 2005).

[16] This Court correctly observed that because *Noerr-Pennington* is grounded in the First Amendment, most courts have applied it to state law claims. *Magnesium Elektron N.A., Inc. v. Applied Chemistries, Inc.*, 2019 WL 7580061, at *2 n.3 (D. Mass. July 26, 2019). And the Supreme Judicial Court has long applied Sherman Act refusal-to-deal principles to 93A claims. *PMP Associates, Inc. v. Globe Newspaper Co.*, 321 N.E.2d 915, 918 (Mass. 1975) (holding that analysis of "refusal to deal" cases under the anti-trust laws "is applicable to the instant case").

Mass. 1995) (at 39), turned on allegations of a ***group*** boycott, not a unilateral refusal.

**Intentional Interference (Count VIII)**. Avangrid does not dispute that conduct protected by *Noerr-Pennington* cannot form the basis of an intentional interference claim.[17] And as to the Breaker allegations, Avangrid does not dispute that courts have "emphasized that under Massachusetts law, refusal to deal alone does not amount to tortious interference." *Butler Corp. v. Gen. Motors Acceptance Corp.*, 2002 WL 31926852, at *6 (D. Mass. Dec. 27, 2002). *General Electric Co.* (at 43 n.39), which allowed a claim based on group boycott allegations reinforces that point. In that case, the court explained that the dismissal would have been appropriate if, as here, the claim were based on a ***unilateral*** refusal to deal alone. 894 F. Supp. at 551.

**Civil Conspiracy (VII)**. Avangrid acknowledges (at 42 n.37) that its civil conspiracy claim requires it to plead some separate, underlying tort that the alleged co-conspirators committed. Because *Noerr-Pennington* forecloses all other claims pleaded arising from the allegedly coordinated political and legal activities at issue, the civil conspiracy claim necessarily fails.

**Unjust Enrichment (Count IX)**. Avangrid does not dispute that an unjust enrichment claim cannot survive where adequate legal remedies are available. Nor can it dispute that antitrust laws (among others) provide adequate legal remedies to competitors injured by petitioning or refusals to deal. That Avangrid fails to satisfy the legal standards for relief under those claims (*Noerr-Pennington* and *Trinko*) is immaterial. *See Shaulis v. Nordstrom, Inc.*, 865 F.3d 1, 16 (1st Cir. 2017) ("It is the availability of a remedy at law, not the viability of that remedy, that prohibits a claim for unjust enrichment."). Where there is no ambiguity as to whether legal remedies are available—as is the case here—the First Circuit requires dismissal of overlapping unjust enrichment claims. *See*

---

[17] That *Storage Technology Corp. v. Custom Hardware Engineering & Consulting, Ltd.*, 2006 WL 1766434, at *35 (D. Mass. June 28, 2006) (at 43, n.38), applied *Noerr-Pennington* at the summary judgment stage is immaterial. As discussed above, *supra* Section I(B), *Noerr-Pennington* is frequently applied at the motion to dismiss stage where, as here, the allegations of sham petitioning are implausible.

*Tomasella v. Nestlé USA, Inc.*, 962 F.3d 60, 83-84 (1st Cir. 2020).[18]

## V.    Avangrid's Claims Are Time-Barred

Avangrid's claims accrued no later than October 2020 when the parties reached impasse as to the Breaker upgrade and the FERC litigation began. Br. at 41-43. Avangrid invokes the continuing violation doctrine, but that requires "a new and independent" act within the limitations period that is "not merely a reaffirmation of a previous act." *Z Techs. Corp. v. Lubrizol Corp.*, 753 F.3d 594, 600 (6th Cir. 2014). Thus, Avangrid's claim (at 48) that NextEra affirmed its position on the Breaker during the limitations period does not transform this conduct into a continuing violation.[19] Avangrid also incorrectly argues (at 46-47) that the speculative damages exception delayed the accrual of its petition-based claims. But an injury from a sham petition by definition flows from the "use [of] the governmental ***process***" itself. *PREI*, 508 U.S. at 50. All petitions at issue here were initiated before November 2020. Avangrid's reliance on cases involving purchaser plaintiffs is misplaced because a purchaser is injured by the higher prices that occur as a result of the sham litigation,[20] while a competitor is injured by the sham litigation itself. *Id.*

## CONCLUSION

For the foregoing reasons, and those set forth in our opening memorandum, the Complaint should be dismissed in its entirety and with prejudice.

---

[18] And even if the availability of legal remedies were not dispositive, the claim still fails because the allegedly ill-gotten gains NextEra received came from monies paid to it by customers, not Avangrid. Compl. ¶¶ 19, 479; *In re TelexFree Sec. Litig.*, 358 F. Supp. 3d 118, 123 (D. Mass. 2019).

[19] *See* Areeda § 320c3 ("An illegal unilateral refusal to deal following a termination of prior dealings or otherwise creates a cause of action when it occurs or becomes final. Plaintiffs are generally not allowed perpetually to restart the limitation period merely by repeated requests that the defendant refuses."); *CSX Transp., Inc. v. Norfolk S. Ry. Co.*, 648 F. Supp. 3d 679, 708 (E.D. Va. Jan. 3, 2023) (claim barred despite recurrence of a refusal to deal) *aff'd* 114 F.4th 280 (4th Cir. 2024).

[20] Avangrid cites only two sham litigation cases with competitor plaintiffs, neither of which involved the speculative damages exception. *TCS John Huxley Am. v. Sci. Games Corp.*, 2020 WL 1678258, at *4 (N.D. Ill. Mar. 20, 2020) turned on the discovery rule and *Chemi SpA v. GlaxoSmithKline*, 356 F. Supp. 2d 495, 500 (E.D. Pa. 2005) has been criticized because it incorrectly applied the general accrual rule. Areeda § 320c4; *see also Med. Mut. of Ohio, Inc. v. Braintree Lab'ys*, 2011 WL 2708818, at *4 n.10 (D. Del. July 12, 2011).

Dated: April 7, 2025

Respectfully submitted,

*/s/ Mark A. Ford*
Mark A. Ford (BBO# 659009)
Holly A. Ovington (BBO# 696631)
WILMER CUTLER PICKERING
  HALE AND DORR LLP
60 State Street
Boston, MA 02109
(617) 526-6000
mark.ford@wilmerhale.com

David Gringer (*Pro Hac Vice*)
WILMER CUTLER PICKERING
  HALE AND DORR LLP
250 Greenwich Street
New York, NY 10007
(212) 230-8800
david.gringer@wilmerhale.com

Ronald C. Machen (*Pro Hac Vice*)
WILMER CUTLER PICKERING
  HALE AND DORR LLP
2100 Pennsylvania Ave. NW
Washington, D.C. 20037
(202) 663-6000
ronald.machen@wilmerhale.com

David Boies (*Pro Hac Vice*)
BOIES SCHILLER FLEXNER LLP
333 Main Street
Armonk, NY 10504
Telephone: (914) 749-8200
dboies@bsfllp.com

Stuart H. Singer (*Pro Hac Vice*)
Sabria McElroy (*Pro Hac Vice*)
Pascual Oliu (*Pro Hac Vice*)
Eric Palmer (*Pro Hac Vice*)
Meredith Schultz (*Pro Hac Vice*)
BOIES SCHILLER FLEXNER LLP
401 East Las Olas Blvd., Suite 1200
Fort Lauderdale, Florida 33301
Telephone: (954) 356-0111
ssinger@bsfllp.com
smcelroy@bsfllp.com

16

poliu@bsfllp.com
mschultz@bsfllp.com

Richard Feinstein (*Pro Hac Vice*)
BOIES SCHILLER FLEXNER LLP
1401 New York Ave, NW
Washington, DC 20005
Telephone: (202) 237-2727
rfeinstein@bsfllp.com

*Attorneys for Defendants NextEra Energy, Inc.,*
*NextEra Energy Capital Holdings, Inc., NextEra*
*Energy Resources, LLC, & NextEra Energy*
*Seabrook, LLC*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of this document has been

served on all counsel of record via the Court's ECF system on April 7, 2025

/s/ Mark A. Ford
Mark A. Ford